UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DAMIAN MASLOWSKI, ARTUR DABEK,
STANISLAW PADUCH and on behalf of all
other persons similarly situated who were
employed by Crimson Construction Corp.,
Skynear Services, LLC, Ben Construction
Consulting, Inc., Christopher Cielepak and
Luke Czachor,

                    Plaintiffs,

       - v -

CRIMSON CONSTRUCTION CORP.,
SKYNEAR SERVICES, LLC, BEN
CONSTRUCTION CONSULTING, INC.,
CHRISTOPHER CIELEPAK and LUKE
CZACHOR
                  Defendants.
------------------------------------------------------------x

**MEMORANDUM AND ORDER**
CV 11-556 (VVP)

The plaintiffs Damian Maslowski, Artur Dabek, and Stanislaw Paduch are laborers of

Polish descent who bring this action against the defaulting defendants Crimson Construction

Corp., ("Crimson"), Skynear Services, LLC, ("Skynear"), Ben Construction Consulting, Inc.,

("Ben"), Christopher Cielepak ("Cielepak"), and Luke Czachor ("Czachor") asserting causes of

action under 42 U.S.C. § 1981, 42 U.S.C. § 2000e ("Title VII"), the New York State Human

Rights Law, Executive Law § 290, the Fair Labor Standards Act (hereinafter "FLSA") and

related claims under provisions of the New York Labor Law (hereinafter "the NYLL"). *See*

Complaint ¶¶ 1-2. The plaintiffs seek to recover unpaid wages, unpaid overtime, and liquidated

damages. *Id.* ¶ 2.

## I.    ENTRY OF DEFAULT JUDGMENT

"It is well established that a party is not entitled to a default judgment as a matter of right;

rather the entry of a default judgment is entrusted to the sound judicial discretion of the court."

*Cablevision of Southern Connecticut v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001),

*quoting Shah v. N.Y. State Department of Civil Services,* 168 F.3d 610, 615 (2d Cir. 1999)

(internal quotations omitted).  When deciding whether to enter default the court considers various

factors, including (1) the amount of money involved; (2) whether issues of fact or of substantial

public importance are at stake; (3) whether the default is largely technical; (4) whether the

plaintiff has been substantially prejudiced by the delay; (5) whether the grounds for default are

clearly established; (6) whether the default was caused by a good-faith mistake or excusable

neglect; (7) how harsh an effect default would have; and (8) whether the court believes it later

would be obligated to set aside the default on defendant's motion.  *Cablevision of Southern*

*Connecticut v. Smith*, 141 F. Supp. 2d at 281, *citing* Moore's Federal Practice § 55.20 {2}{b} (3d

ed. 1999).  In civil actions, when a party fails to appear after being given notice, the court

normally has justification for entering default.  *Bermudez v. Reid,* 733 F.2d 18, 21 (2d Cir. 1984).

The plaintiff has filed affidavits of licensed process servers attesting to service of the

summons and complaint in this action upon the defendants.  The defendants Skynear, Crimson

and Ben were served by delivering copies of the summons and complaint to the New York

Secretary of State in accordance with the provisions of Section 303 of the Limited Liability Law,

and Section 306 of the Business Corporation Law.  The defendant Czachor was served by

personal delivery of the summons and complaint pursuant to Section 308 (1) of the New York

Civil Practice Laws and Rules ("CPLR").  The defendant Cielepak was served by "nail and mail"

pursuant to Section 308 (4) of the CPLR.  Each method of service is authorized by Rule 4 (c)(1)

of the Federal Rules of Civil Procedure.  The defendants have failed to interpose an answer, or

otherwise respond to the complaint.  Nor have the defendants responded to the plaintiffs'

application for default.  The grounds for default are therefore clearly established, and there are no

grounds for believing the defaults are based on a good-faith mistake or technicality.  *See*

*Cablevision Systems New York City Corporation v. Leach*, No. 01 Civ. 9515, 2002 WL 1751343,

at *2 (S.D.N.Y. July 26, 2002) (default willful where defendant never responded to complaint,

appeared or explained default).  Finally, based on the defendants' inaction, it is unlikely that the

court will be compelled at some future date to enter an order vacating the default judgment.

Judgment by default will therefore be granted so long as liability and damages are appropriately

established.

## II.    LIABILITY

By virtue of the defendants' defaults, the well-pleaded allegations of the Complaint are

deemed admitted, except as to the amount of the plaintiffs' damages.  *See, e.g.*, *Greyhound*

*Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 113 S. Ct.

1049 (1993); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).  Thus, in

examining the defendants' liability on each of the plaintiffs' claims below, the court deems the

facts alleged in the complaint to be proved and sets those facts forth below as they relate to the

various claims.

According to the well-pleaded allegations of the complaint, the plaintiffs Maslowski,

Dabek, and Paduch were employed by the defendants Crimson, Ben, and Skynear ("the defendant

companies") as laborers and bricklayers in the construction industry.  *See* Complaint ¶¶ 2, 9 at

page 4, 16.[1]  The plaintiffs are all of Polish national origin.  *Id*. ¶¶ 10-12 at page 4.  The

_____

[1]The numbered paragraphs 9 through 15 at pages 3 through 6 of the Complaint are either misnumbered or
are repeated.  When these paragraph numbers are cited, the citation will also include the page number of
the Complaint where that paragraph is found.

defendants Czachor and Cielepak are owners, principal shareholders, and or directors of the defendant companies. *Id.* ¶¶ 12-13 at page 4. Czachor and Cielepak controlled the day-to-day operations of the defendant companies, made major personnel decisions such as hiring and firing workers, as well as supervising and setting employee work schedules and conditions of employment. *Id.* ¶¶ 36-41.

In May 2007, Maslowski was hired as a laborer by Crimson, and paid at a rate of $30.00 per hour. *Id* ¶ 17. Crimson employed approximately one hundred laborers at each job site, of which about fifteen to twenty were of Polish descent. *Id.* However, in July 2007, Maslowski was informed that he would now be working for Skynear and his pay was reduced by the defendants to $20.00 per hour. *Id.* ¶ 18. In July 2008, the Polish workers were informed that they were now employed by Ben although none of their job descriptions, duties, or job sites changed. *Id.* ¶ 20. Later, in February 2009, Maslowski was instructed to begin transporting other workers to and from a job site in Pennsylvania, but was not compensated for the hours he spent performing this task. *Id.* ¶¶ 20-21. In February 2010, Maslowski and other Polish workers were terminated when they refused to take a further pay cut to $15.00 in order to retain their employment. *Id.* ¶ 23.

The well-pleaded complaint further establishes that the plaintiff Dabek began working for the defendant Skynear as a bricklayer in May 2007, and was paid $28.00. *Id.* ¶ 24. Dabek worked on a crew with all Polish workers. *Id.* Like Maslowski, Dabek and the other Polish workers in his crew were informed in July 2008 that they were now employed by Ben. *Id.* ¶ 25. Dabek earned $30.00 per hour while working for Ben. *Id.* However, Dabek and the other Polish

workers were terminated in March 2010 when they refused to take a pay cut to $20.00 per hour. *Id.* ¶ 26.

Paduch, like Dabek, was first hired to work as a bricklayer for Skynear and was paid $22.00 per hour while working with an all Polish crew. *Id.* ¶ 27. In July 2008, Paduch and his crew also began working for Ben, and he was paid $26.00 per hour. *Id.* ¶ 28. However, in June 2010, Paduch suffered the same fate as his co-plaintiffs as he and the Polish members of his crew were terminated after not accepting a reduction in salary to $20.00 per hour. *Id.* ¶ 29. At the time of his firing, Paduch was owed back wages for approximately 139 hours of work that he had performed. *Id.* ¶ 30.

The allegations of the complaint establish that Polish workers in general were paid much less than American workers. *Id.* ¶ 31. For instance, on job sites where Paduch was compensated at $22.00 per hour and Dabek $28.00, the non-Polish workers were earning $48.00 per hour. *Id.* Similarly, when Maslowski's pay was reduced from $30 to $20 per hour, only he and his fellow Polish laborers suffered the pay cut; the other laborers did not. *Id.* ¶¶ 18-19. Further, the plaintiffs typically worked five or six days per week, normally in excess of eight hours per day, and usually in excess of 40 hours per week. *Id.* ¶¶ 32-34. In addition, the plaintiffs and other Polish workers were not paid the required 1.5 times the regular pay for hours worked in excess of 40 per week. *Id.* ¶ 34.

As noted above, the plaintiffs seek to recover back pay, overtime pay, and liquidated damages. Although the plaintiffs assert a number of causes of action seeking the relief requested, only certain claims are viable, and the plaintiffs fall short of establishing that they are entitled to all of the damages sought.

**A.     Section 1981**

The plaintiffs' Section 1981 claim fails as matter of law.  The plaintiffs assert that they were discriminated against because they are Polish, that is, because of their national origin.  It is well-established, however,  that Section 1981 was enacted to combat racial discrimination, *see Saint Joseph's College v. Al-Khazraji,* 481 U.S. 604, 613, 107 S.Ct 2022, 2028, 95 L.Ed.2d 582 (1987), and does not cover discrimination based on national origin.  *See Lee v. Sony BMG Music Entertainment Inc.,* 557 F. Supp.2d 418, 424 (S.D.N.Y. May 15, 2008) *quoting Saint Joseph's College,* 481 U.S. at 613.  The claims brought here under Section 1981 therefore must be dismissed with prejudice.

**B.     Title VII**

The plaintiffs also claim the defendants have engaged in discrimination that violated Title VII.  Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. §§ 2000e *et seq*., provides that,

> (a) It shall be an unlawful employment practice for an employer—
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a)(1).

Before commencing an action in federal court under Title VII, a claimant must first file a claim with the EEOC.  Title VII requires that charges brought under it must be filed with the EEOC within at most 300 days after the alleged unlawful employment practice occurred in order for it to be timely.  If the plaintiff does not file the charge with the EEOC, the plaintiff loses the ability to recover for it.  *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 109–10

(2002); 42 U.S.C. §§ 2000e–5(e)(1), 2000e–5(f)(1). If after a review by the EEOC, the plaintiff obtains a "Right to Sue" letter, a lawsuit must be filed within 90 days of receipt of the letter.

All of the plaintiffs' claims are timely in that they filed a claim with the EEOC within 300 days of their unjust terminations. Maslowski's claim arose when he was constructively fired on February 15, 2010, and he filed his complaint with the EEOC in August 2010 which is within the 300-day period. *See* Complaint ¶ 11 at page 5, ¶ 23. Dabek was terminated in March 2010, and filed his complaint with the EEOC in September 2010, which was also timely. *Id.* ¶¶ 11 at page 5, 26. Paduch was fired in June 2010, and also filed his action with the EEOC in September 2010. *Id.* ¶¶ 11 at page 5, 29. The plaintiffs were each issued "Right to Sue" letters by the EEOC on December 1, 2010. *Id.* ¶ 13 at page 5, Exh. A. The instant complaint was filed in this court on February 4, 2011, well within the 90-day period for doing so.

Having determined that the plaintiffs' Title VII claim is timely, the court will analyze the substance of the claim. It is well-settled that Title VII claims are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see, e.g. Ruiz v. County of Rockland*, 609 F.3d 486, 491-92 (2d Cir. 2010). Under the *McDonnell-Douglas* test, the plaintiff must establish (1) membership in a protected class; (2) qualification for the position he held; (3) an adverse employment action; and (4) that the adverse employment action occurred under circumstances that give rise to an inference of discrimination. Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the [adverse employment action]." *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311, 116 S. Ct. 1307, 134 L.Ed.2d 433 (1996).

The uncontested allegations of the complaint establish that the three Polish plaintiffs are all members of a protected class. The fact that the plaintiffs were all hired by the defendants, were employed for a number of years, and obtained some pay increases clearly establish that the plaintiffs were qualified for the positions they held. The plaintiffs have also demonstrated that they, and other Polish workers, received substantially less compensation than non-Polish employees performing the same tasks, and they were constructively fired when only Polish workers were required to take a pay reduction in order to keep their positions. Since the defendants have chosen to default in this action, there is no evidence of a non-discriminatory reason for the adverse employment actions taken against the plaintiffs.

These facts are sufficient to establish the liability, under Title VII, of the corporate defendants Ben, Skynear, and Crimson for discriminating on the basis of national origin. However, as the Second Circuit does not recognize individual liability under Title VII, *see Tomka v. Seiler Corp.,* 66 F.3d 1295, 1313-17 (2d. Cir. 1995); *Sassaman v. Gamache*, 566 F. 3d 307, 315 (2d Cir. 2009), the Title VII claims against Cielepak and Czachor cannot be maintained and must be dismissed.

### C. New York State Human Rights Law/New York City Human Rights Law

The New York State Human Rights Law ("NYSHRL") provides that:

1. It shall be an unlawful discriminatory practice:

(a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

N.Y. Exec. Law § 296(1)(a).

In a similar vein, the New York City Human Rights Law ("NYCHRL") also prohibits

discrimination on the basis of national origin. *See* NYC Administrative Code § 8-101, *et seq*.

Employment discrimination claims brought under the NYSHRL, or the NYCHRL are analyzed

using the same burden-shifting framework of *McDonnell-Douglas* that is used to determine

liability under Title VII claims. *See Abdu–Brisson v. Delta Air Lines, Inc.,* 239 F.3d 456, 466

(2d Cir. 2001). Thus, having established liability under Title VII, the plaintiffs have also

established liability under the NYSHRL and NYCHRL. *See e.g. Id.; Tomassi v. Insignia Fin.

Group, Inc.,* 478 F.3d 111, 114 n.3 (2d. Cir. 2009). In addition, "With respect to liability under

state and city human rights laws, the Second Circuit [in *Tomka v. Seiler Corp.,* 66 F.3d 1295,

1313-17 (2d. Cir. 1995),] has held that individuals may be held liable, even though New York

appellate divisions are split on the issue." *Doe v. City of New York,* 583 F. Supp. 2d 444, 450

(S.D.N.Y. 2008) (citing *Tomka; Steadman v. Sinclair,* 223 A.D.2d 392, 636 N.Y.S.2d 325, (1st

Dep't 1996) (holding that individuals can be held liable). Thus, the individual defendants, as

well as the corporate defendants, are liable for discrimination based upon the plaintiffs' national

origin in violation of the NYSHRL and the NYCHRL.

### D.     FLSA

The plaintiffs next assert violations of the FLSA. The FLSA limits an employee's work

week to "forty hours unless such employee receives compensation for his employment in excess

of hours above specified at a rate not less than one and one-half times the regular rate at which he

is employed." 29 U.S.C. § 207(a)(1). The allegations of the complaint as set forth above

establish that the defendants failed to pay the plaintiffs overtime pay in violation of the FLSA.

However, as a threshold matter, the FLSA's overtime provisions apply to two classes of

employees, those "engaged in commerce, or in the production of goods for commerce" and those who are "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1). "Commerce" is specifically defined under the FLSA to mean "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). An "enterprise engaged in commerce or in the production of goods for commerce" is one that " has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and whose annual gross volume of sales or business equals or exceeds $500,000.00. 29 U.S.C. § 203(s)(1)(A)(i)-(ii).

The plaintiffs have not established that the defendants violated the FLSA. The allegations of the complaint fail to set forth facts showing that the defendants are engaged in commerce as defined by the statute. The complaint does not establish that the defendants are engaged in the production of goods for commerce, nor have the uncontested allegations demonstrated that the employees are handling, selling or otherwise working on goods that have been moved in commerce. In addition, the plaintiffs' have not alleged that the defendants have an annual gross volume of business that exceeds $500,000. Therefore, the plaintiffs' claims under the FLSA must also be dismissed.

### E.    New York Labor Law

Next the plaintiffs assert that they were not properly compensated for the overtime hours they worked, in that they were paid only their regular hourly rate for overtime hours. The NYLL provides that "an employer shall pay an employee for overtime at a wage rate of one and one-half

times the employee's regular rate." *See* N.Y. Lab. Law § 652 (1). The NYLL thus provides essentially the same rights with respect to overtime compensation as the FLSA. Although an employee bringing an action for unpaid wages has the burden of proving that the employee was not properly compensated for the work performed, *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), it is the employer's responsibility to maintain accurate records of an employee's hours. *See* N.Y. Comp. Codes R & Regs. tit. 12, § 142-2.6 ("Every employer shall establish, maintain and preserve for not less than six years weekly payroll records."). When an employer's records are inadequate, the employees may meet their burden by producing "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Rivera v. Ndola Pharmacy Corp.*, 497 F.Supp.2d 381, 388 (E.D.N.Y. 2007). The plaintiffs may meet this burden solely through their own recollection. *Id.* (*citing Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 335 (S.D.N.Y.2005)); *see also Dong v. CCW Fashion, Inc.*, No. 06 Civ. 4973 (LAP), 2009 WL 884668, at *3 (S.D.N.Y. Apr. 1, 2009) (citations omitted). The burden then shifts to the employer to prove by a preponderance of the evidence that the plaintiff was properly paid for the hours worked. *See* N.Y. Lab. Law § 196a (2009) (when an employer fails "to keep adequate records . . . the employer in violation shall bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements").

The well-pleaded allegations establish that the plaintiffs worked overtime hours for which they were not properly compensated. These allegations are sufficient to establish the defendants' liability for violating the NYLL, and the court will therefore move to a discussion of the plaintiffs' damages.

## III.    DAMAGES

Having provided notice to the defaulting defendants, the court is permitted to consider affidavits on the appropriate amount of damages to be awarded. *See, e.g., Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 11 (2d Cir. 1997) ("We have held that, under Rule 55(b)(2), it [is] not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment."); *accord, Fustok v. ContiCommodity Serv., Inc.,* 873 F.2d 38, 40 (2d Cir. 1989); *Tamarin v. Adam Caterers, Inc.,* 13 F.3d 51, 54 (2d Cir. 1993). The court has received and considered affidavits submitted by the plaintiffs. The defendants have received notice, but have not made any submissions. The plaintiffs' submissions provide the basis for the factual findings below concerning damages.

As explained earlier, the well–pleaded allegations in the complaint have established the defendants' liability for discrimination under Title VII, the NYSHRL and the NYCHRL. In their submissions concerning damages, however, the plaintiffs cite only Title VII and Section 1981. Nevertheless, the court awards damages under the NYSHRL and the NYCHRL below. As noted earlier, Section 1981 does not furnish a basis for liability in this case. As for Title VII, although liability is established, the damages available for the plaintiffs under that statute are more limited than under the NYSHRL and the NYCHRL. The statute of limitations under Title VII permits the plaintiffs to recover underpaid wages for only the 300-day period prior to the filing of their EEOC complaints. As the plaintiffs filed their complaint with the EEOC in August and September 2010, they may only recover for damages under Title VII for discrimination occurring after October and November 2009. Under the NYSHRL and the NYCHRL, however, damages

may be awarded for up to three years prior to the filing of their complaints with the court.[2]

"Under the NYCHRL and the NYSHRL, a plaintiff suing for discrimination must file a lawsuit within three years after the alleged unlawful practice." *Farage v. Johnson-McClean Technologies*, No. 01 Civ. 4586, 2002 WL 107824, at *5 (S.D.N.Y. May 29, 2002). Since this action was filed on February 4, 2011, the plaintiffs may recover damages under the NYSHRL and NYCHRL going back to February 4, 2008. Moreover, individual liability may be imposed on the individual defendants Cielepak and Czachor under the NYSHRL and the NYCHRL, but not under Title VII.

Similarly, the plaintiffs have cited only the FLSA in their submissions concerning damages for unpaid overtime compensation. As noted above, however, the well-pleaded allegations of the complaint do not establish liability under that statute. They do, however, establish liability under the NYLL, which the plaintiffs cite in their complaint, and the court will therefore make awards for unpaid overtime compensation under the NYLL notwithstanding that the plaintiffs do not specifically cite that law in their submissions.

To assess damages, the court will first determine how much each plaintiff is entitled to receive as back pay for discrimination. This will be done by calculating how much each plaintiff should have been paid for the first 40 hours of each week if they had been paid the non-discriminatory rate, and subtract from that figure the amount they were actually paid for the first

---

[2]     In general, the statute of limitations under the NYSHRL and the NYCHRL is three years. *Sotomayor v. City of New York,* No. 10-CV-3411(JBW), 862 F. Supp. 2d. 226, 248-49 (E.D.N.Y. 2012) *citing* N.Y.C.P.L.R.2142(2); N.Y.C. Admin. Code §§ 8-502(d); *Koerner v. State of New York,* 62 N.Y. 2d 442, 478 N.Y.S. 2d 584, 467 N.E. 2d 232, 233-34 (1984) (holding that the three-year statute of limitations applies to discrimination claims under the NYSHRL). Thus, under those statutes, the recovery period for damages extends back for three years from the date on which an action is filed with the court. N.Y.C.P.L.R. § 214(2) (McKinney's 2008); *Quinn v. Green Trace Credit Corp.,* 159 F.3d 759, 765 (2d. Cir. 1998).

40 hours at the discriminatory rate. Next, the court will determine how much each plaintiff should have been paid for the overtime they worked each week, and subtract from that the amount they were actually paid for those overtime hours. Finally, the court will calculate the liquidated damages awards each plaintiff is entitled to receive.

### A.    Back Pay for Discrimination: Straight-Time Hours

1.    *Damian Maslowski*

Damian Maslowski was hired by Crimson in May 2007 to work as a laborer for $30.00 per hour. *See* Declaration of Damian Maslowski ("Maslowski Decl.") ¶ 2. After working for approximately one month, he was told that he would now be working for Skynear with his salary reduced to $20.00 per hour. *Id.* ¶ 3. As noted above, this pay cut applied only to Maslowski and his fellow Polish laborers. In August 2009, his salary was increased to $21.00, and it remained at that rate until he left the employment of the defendants in February 2010. *Id.* ¶ 10.

As discussed earlier, because the statute of limitations under both the NYSHRL and the NYCHRL is three years and the Complaint was filed in February 2011, Maslowski may recover damages dating back to February 2008. From February 2008 through July 2009, he was paid at the discriminatory rate of $20 per hour for the first 40 hours each week, and therefore was paid $800 per week for those hours. At the non-discriminatory rate of $30 per hour he should have received compensation of $1,200 per week for the first 40 hours during that time period. Therefore, over this 72-week period Maslowski is entitled to back pay in the amount of $400 per week, which comes to a total of $28,800. Similarly from August 2009 until February 2010 when he was paid $21.00 per hour, he was paid $840 for the first 40 hours, when he should have received $1,200. For this 28-week time period, Maslowski is owed back pay of an additional

$360 per week, a total of $10,080.  Therefore, Maslowski is entitled to a total of $38,880 for straight-time back pay.

2.    *Artur Dabek*

Artur Dabek worked for the defendants from May 2007 until March 2010.  *See* Declaration of Artur Dabek ("Dabek Decl.") ¶¶ 2, 12.  When he began his employment he was paid $25.00 per hour, while non-Polish workers performing the same work received $48.00 per hour.  *Id.*  ¶¶ 2, 5.  Dabek's pay increased to $28.00 per hour in 2008, and increased again in 2009 to $30.00 per hour.  *Id.*  ¶¶ 7-8.

Again, since Dabek's Complaint was filed in February 2011, his damages for back pay may be calculated only from February 2008.  Using the rate of $48.00 per hour that others were paid, and utilizing the same formula employed above,  Dabek is entitled to back pay as follows. Beginning in February 2008 and through October 2009, he was paid at the discriminatory rate of $25 per hour for the first 40 hours each week, and therefore was paid $1,000 per week for those hours.  At the non-discriminatory rate of $48 per hour for the same time period he should have received compensation of $1,920 per week for the first 40 hours.  Therefore, over this 88-week period Dabek should have been paid $920 more per week, which comes to a total of $80,960. Similarly from November 2009 through March 2010 when he was paid $28.00 per hour, he was paid $1,120 for the first 40 hours, when he should have received $1,920, i.e., $800 more per week.  For this 20-week time period, then Dabek is owed an additional $16,000.  Totaling the above amounts produces an award of $96,960 to Dabek for straight-time back pay.

3.     *Stanislaw Paduch*

Stanislaw Paduch, who was a bricklayer like Dabek, worked for the defendants for 16 weeks from February 2008 through May 2008 at the rate of $20.00, instead of $48.00 per hour. *See* Declaration of Stanislaw Paduch ("Paduch Decl.") ¶¶ 2-5.  During this period, for the first 40 hours of each work week Paduch was paid $800, whereas if he was compensated at the non-discriminatory rate of $48 per hour he would have earned $1,920.  Therefore over this 16-week period he is owed an additional $1,120 per week, totaling $17,920.  In June 2008, his pay rate was increased to $26.00 per hour.  *Id.* ¶ 4.  Thus, for the time period between June 2008 and February 2010,  Paduch was paid $1,040 per week for his first 40 hours of work when he should have been paid $1,920 a week.  As a result, he was underpaid by $880 per week for these 66 weeks and is entitled to back pay totaling $58,080 for this period.  In March 2010, Paduch's salary was reduced to $20.00 per hour, the salary he made until his employment was terminated that month.  *Id.* ¶ 5.  During this 4-week time period, Paduch was paid $800 for the first 40 hours each week, while at a just rate of $48 per hour he would have earned $1,920; he is therefore owed back pay of $4,480 for this time period.  In addition, Paduch did not receive any pay for 139 hours that he worked during this same time period, and therefore at the non-discriminatory rate of $48 he is due an additional $6,672.  *Id.* ¶ 6.  Therefore, Paduch is entitled to a total of $87,152 for straight-time back pay.

**B.     Overtime Compensation**

The NYLL provides that "an employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate."  *See* NYLL 652 (1).  As noted earlier, the plaintiffs never received compensation for overtime at one and one half times their regular

rate of pay. Rather, they were paid their regular rate of pay for overtime hours. Under New York law, the statute of limitations for claims for unpaid wages is six years, which entitles the plaintiffs to recover under New York law for unpaid overtime wages earned on and after February 4, 2005. *See* N.Y. Lab. Law §§ 198(3), 663(3). The court having determined that the plaintiffs' rate of pay was unlawfully discriminatory, the overtime compensation owed to the plaintiffs will be calculated using the non-discriminatory wage. However, given the three-year statute of limitations under the NYSHRL, the overtime damages for the periods before February 2008 must be calculated using the wage that the plaintiffs were paid at that time. Any damages awarded for overtime hours worked from February 2008 forward will be determined using the non-discriminatory wage calculated at time and one-half.

    1.    *Damian Maslowski*

    Maslowski's typical work day was from 7:00 a.m. to 6:30 p.m. Monday through Friday. See Maslowski Decl. ¶ 9. He also generally worked on Saturdays from 8:00 a.m to 5:30 p.m. *Id.* Therefore in a typical work-week, Maslowski worked approximately 62.5 hours, of which 22.5 were overtime. He was always paid his straight-time wage, and never received the required one and one-half hourly rate for hours that exceeded 40 in a given week. *Id.* ¶ 9. Thus, from August 2007, when he began to work for the defendants, through January 2008 he was paid overtime at a rate of $20 per hour, and received $450 for the 22.5 overtime hours he worked each week. Had he been paid the proper overtime rate of $30 per hour he would have earned $675 a week, a difference of $225 per week. Therefore, over this 68-week period he is due $15,300. From February 2008 through July 2009, he was also paid $20 per hour and $450 per week for his overtime work. During this time period, however, when his non-discriminatory pay rate should

have been $30 per hour, his overtime wage should have been $45 per hour. Thus he should have

received $1,012.50 for his 22.5 hours of overtime instead of the $450 he was paid, a difference of

$562.50 per week. Over this 72-week period, then, he is owed an additional $40,500 for

overtime (72 x $562.50). Lastly, from August 2009 until February 2010, he was paid only $21

per hour for 22.5 hours of overtime, or $472.50 per week. At the non-discriminatory rate of $45

he should have been compensated at $1,012.50 per week, a difference of $540 per week, and he

is thus owed an additional $15,120 for this 28-week period. Therefore, Maslowski is due total

back pay for overtime in the amount of $70,920.

  2. *Artur Dabek*

  Dabek kept detailed records of the number of hours he worked. *See* Dabek Decl. ¶ 6. His

time records indicate that in 2008 he worked 443 hours of overtime while being paid $25.00 per

hour, and 50 hours of overtime at $28.00 per hour, in 2009 he worked 244 hours of overtime at

$28.00 per hour and 116 hours at $30.00, and finally in 2010 he worked 51 hours overtime. *Id.*

¶¶ 6-9. He was always only paid his regular, discriminatory wage for any overtime hours. *Id.* ¶

10. In 2007, Dabek worked 135 hours of overtime at $25 per hour for which he was paid $3,375.

However, had he been paid the proper overtime rate of $37.50, he would have earned $5,062.50

and therefore is due $1,687.50. Beginning in February 2008, he worked 443 overtime hours at

$25 per hour, and was paid $11,075. At this point, Dabek should have been earning $72 per

hour, the non-discriminatory wage for time and one-half overtime pay. Had he been paid the

proper overtime rate of $72 he would have earned $31,996, and is therefore due $20,821.

Between 2009 and 2009, while making $28 per hour, Dabek worked 294 hours of overtime and

was paid $8,232. Had he been paid the non-discriminatory overtime wage of $72 per hour he

would have been compensated with $21,168, and is therefore due $12,936. After his salary was increased to $30 per hour, he worked 167 hours of overtime and was paid $5,010. Had he been justly compensated at $72 per hour he would have earned $12,024 and is therefore due an additional $7,014. Therefore, Dabek is entitled to total overtime back pay of $42,458.50.

3. *Stanislaw Paduch*

Paduch asserts that he averaged approximately 60 hours per week. *See* Paduch Decl. ¶ 5. He does state that some weeks he worked as many as 80 hours, but unfortunately these hours are not substantiated, in the sense that the court has no basis on which to determine how many weeks he worked 80 hours. *Id.* Therefore, the court is confined to determining Paduch's overtime compensation based upon 20 hours of overtime per week at the just overtime rate per hour. For 16 weeks, from October 2007 through January 2008, Paduch's salary was $20 per hour for overtime, and was therefore paid $400 per week. Had he been paid at the proper time and one-half rate of $30 per hour he would have earned $600, or $200 more, per week. Therefore, over these 16 weeks he is owed $3,200 in overtime compensation. Beginning in February 2008, Paduch should have been earning the non-discriminatory rate of $72 per hour for time and one-half overtime pay. From February 2008 through May 2008, for these 16 weeks he was still only paid $20 per hour and $400 per week for overtime. However, he was entitled to have been paid $72 per hour for overtime, which comes to $1,440 per week, i.e., $1,040 per week more than he was actually paid. Therefore, for these 16 weeks Paduch is owed $16,640. After his salary was increased to $26 per hour in June 2008, Paduch was paid $520 per week for overtime. At the non-discriminatory rate of $72 hours he should have earned $1,440 per week, and was therefore underpaid by $920 per week. As this salary continued for the next 66 weeks, he is owed $60,720

for this period of time. Finally for his last 4 weeks of employment, Paduch's salary was reduced to $20 per hour, and he therefore again was paid $400 per week for overtime. Had he been paid the just overtime salary of $72 per hour, he would have earned $1,440, or $1,040 more per week. Therefore, over the last 4 weeks, he is owed an additional $4,160. Totaling all of the above underpayments, Paduch is entitled to total overtime back pay of $84,720.

### C.    Liquidated Damages

The plaintiffs also seek liquidated damages. Liquidated damages under the NYLL are calculated at 25% of all unpaid wages. N.Y. Lab. Law § 198(1-a). However, unlike the FLSA, there is no presumption in favor of liquidated damages under the NYLL. *See* N.Y. Lab. Law § 198(1-a). Rather, to be eligible for liquidated damages, an employee must show that the employer's violation of law was willful.[3] *See* N.Y. Lab. Law § 198(1-a). In addition, the purpose of the NYLL's liquidated damages provision is punitive rather than compensatory. *See* N.Y. Lab. Law § 198(1-a); *see also Moon*, 248 F. Supp. 2d at 235. The test for willfulness under the NYLL is whether the employer "knowingly, deliberately, or voluntarily disregarded] its obligation to pay wages." *Moon v. Kwon*, 48 F. Supp. 2d 201, 235 (S.D.N.Y. 2002) (quoting *Ayres v. 127 Restaurant Corp.*, 12 F. Supp. 2d 305, 309 (S.D.N.Y. 1998)). As the defendants have defaulted, the plaintiffs' allegations that the defendants' conduct was "willful" are credited. *See, Wicaksono v. XYZ 48 Corp.,* 10 CiV. 3635, 2011 WL 2-22644 at *6 (S.D.N.Y. May 2, 2011). The plaintiffs' liquidated damages are calculated by taking one-quarter of the damages

---

[3]The New York legislature recently amended the statute to shift the burden to the employer to avoid liability for liquidated damages. As of November 24, 2009, under NYLL § 198 (1-a), an employer is liable for liquidated damages unless the employer provides a good faith explanation for its violation of the law. *See* N.Y. Lab. Law § 198(1-a).

they are owed for proper overtime compensation.  Therefore, Maslowski is entitled to an additional $17,730, Dabek $10,614.63, and Paduch is entitled to an additional $21,180.

## IV.  CONCLUSION

In accordance with the above considerations, the Clerk of Court shall enter a default judgment in favor of the plaintiffs against the defendants as follows:

1.  Awarding Damian Maslowski a total of $127,530, consisting of $38,880 for back pay, $70,920 for unpaid overtime, and $17,730 in liquidated damages;

2.  Awarding Artur Dabek a total of $150,033.13, consisting of $96,960 for back pay, $42,458.50 for unpaid overtime, and $10,614.63 in liquidated damages and;

3.  Awarding Stanislaw Paduch a total of $193,052, consisting of $87,152 for back pay, $84,720 for unpaid overtime, and $21,180 in liquidated damages.

**Counsel for the plaintiffs shall serve a copy of this Memorandum and Order on the defendants by regular mail and file proof of such service in the record.**

**SO ORDERED:**

*Viktor V. Pohorelsky*

VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated:     Brooklyn, New York
               February 26, 2013